UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

FLOYD CLIFTON WOOLEY and
VALERIE D. WOOLEY,

    Debtors.

CASE NO. 05-14399-WSS

---

BAY MINETTE BUILDING SUPPLY, INC.,

    Plaintiff,

v.

F. CLIFTON WOOLEY,

    Defendant.

ADV. PROC. NO. 05-01115

### ORDER ON PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY PURSUANT TO 11 U.S.C. §523(a)(2)(A)

Russell J. Watson, Counsel for the Plaintiff
Irvin Grodsky, Counsel for the Defendant

This matter came on for hearing on the complaint to determine dischargeability of a debt pursuant to 11 U.S.C. §523(a)(2)(A). The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Plaintiff's complaint alleges that the debt at issue is nondischargeable under 11 U.S.C. §523(a)(2) and §523(a)(19). At trial, the Plaintiff stated that subsection (a)(19) was not applicable to this case, and offered no evidence concerning that section.

The facts of this case are straightforward. F. Clifton Wooley, the Debtor in this case, was

1

the primary owner of Classic Southern Homes, L.L.C., a contracting business. Classic Homes began doing business with the Plaintiff, Bay Minette Building Supply, Inc., in December 2004. Mr. Wooley signed a guaranty for Classic Home's debt to Bay Minette. After Classic Homes failed to pay the debt, Bay Minette filed suit against Classic Homes and Mr. Wooley in the Circuit Court of Baldwin County, Alabama seeking approximately $74,000 for unpaid materials.

After the lawsuit was filed, Mr. Wooley paid Bay Minette approximately $13,000 toward the debt. The parties ultimately reached a settlement agreement on December 20, 2004, which required Mr. Wooley to pay $10,000 within 10 business days of the agreement, and $5,000 each week thereafter until the bill is paid in full. Mr. Wooley would also pay $6,000 for attorney fees. On payment of the $10,000, Bay Minette would execute a letter certifying that no liens had been placed on the homes under construction by Classic Homes. The settlement agreement was entered into by Classic Homes, not Mr. Wooley individually. He signed the settlement agreement in his capacity as managing partner of Classic Homes.

Mr. Wooley made the initial $10,000 payment and Bay Minette issued the letter agreeing not to place liens on the homes at issue. Mr. Wooley made a $5,000 payment in January 2005, and made no further payments to Bay Minette. He filed the current chapter 7 bankruptcy on August 9, 2005. Classic Homes filed a chapter 7 petition on the same date. Bay Minette's state court action was set for trial the next day on August 10, 2005.

Mr. Wooley testified that he believed he could make the payments under the settlement agreements from the proceeds from projects that Classic Homes had underway. He had fourteen jobs for Classic Homes when he entered into the agreement. He testified that he was not planning to wait until Bay Minette's four month period for filing mechanic's lien had expired to

2

stop making payments.  Mr. Wooley testified that his business collapsed in January 2005 due to Hurricane Ivan.  He lost crucial members of his labor force to reconstruction from the storm and building materials were not available.  By December 2004, he had replaced some of his labor force, but his customers had lost patience with the delays and refused to pay for building supplies.  At the time that he entered into the settlement agreement, Mr. Wooley believed that he would be able to make the payments.  Mrs. Wooley, who is familiar with the operations of Classic Homes testified that Classic Homes' business was not good during the time that the settlement agreement was being negotiated, and that their customers were not paying.

The complaint alleges that the debt created by the settlement agreement is nondischargeable under 11 U.S.C. §523(a)(2), which provides that the debtor cannot receive a discharge for a debt for money or property to the extent obtained by "false pretenses, a false representation, or actual fraud, . . .".  To prevail under § 523(a)(2)(A), a creditor must show that: (1) the debtor made a representation; (2) at the time, the debtor knew the representations were false; (3) the debtor made the false representations with the purpose and intention of deceiving the creditor; (4) the creditor justifiably relied on the representations; and (5) the creditor sustained a loss as a result of the representation.  *In re Meyer*, 296 B.R. 849, 858 (Bankr. N.D. Ala. 2003).  The standard of proof is a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279 (1991).

Bay Minette alleges two different false representations by Mr. Wooley.  First, that he entered into the settlement agreement with an inability to pay under the terms of the agreement.  Secondly, that he entered into the agreement and made the initial payments while waiting for the four month statutory period to expire for filing a notice of lien.  As to the first misrepresentation,

3

Bay Minette maintains that it did not have to show that Mr. Wooley had the intent to deceive Bay Minette when he signed the agreement, only that he made a false representation with reckless disregard for the truth. The evidence is to the contrary. After the signing the agreement, Classic Homes made the initial payment of $10,000 and a subsequent payment of $5,000. Mr. Wooley explained his reasoning for believing that Classic Homes would be able to make the payments under the agreement. He was able to replace workers lost due to hurricane reconstruction and building materials became more available. Unfortunately, by this point, Classic Homes' clients had lost faith in its ability to complete the work and stopped paying. Mr. Wooley was wrong about Classic Homes' ability to make the payments under the settlement agreement, but there is not sufficient evidence that he entered into the agreement with reckless disregard to the truth of Classic Homes' ability to pay.

Regarding the second alleged misrepresentation that Mr. Wooley entered into the settlement agreement and waited for the four month statutory period for filing liens to run before stopping payment. This type of misrepresentation is deliberate, and does not fit the reckless disregard for the truth category. This allegation is more in the nature of promissory fraud. To recover for promissory fraud, the plaintiff must prove that the defendant intended not to fulfill the promise when made and intended to deceive the plaintiff. *McGriff v. Minnesota Mutual Life Ins. Co.*, 127 F.3d 1410, 1414 (11th Cir. 1997). Again, the evidence presented does not show that Wooley intended to deceive Bay Minette Supply by signing the settlement agreement and waiting for the four month statutory period for filing liens to run. Classic Homes made two payments under the settlement agreement. As counsel for Wooley noted, the fact that Classic Homes was having financial difficulty could not have been a secret to Bay Minette Supply, given

4

Case 05-01115    Doc 16    Filed 11/06/06    Entered 11/06/06 16:21:31    Desc Main
Document    Page 4 of 5

the state court action Bay Minette Supply filed against Classic Homes for nonpayment of its debt. Bay Minette Supply was certainly willing to take the payments and was aware of the risk that the lien filing period would expire. The Court finds no evidence to support the allegation that Wooley deliberately waited for the lien period to run. Classic Homes' failure to pay after the lien period expired, by itself, is not enough to find that Wooley intended to deceive Bay Minette Supply and cause it to give up its liens.

Based on the foregoing, the Court finds that the relief sought in the Plaintiff's complaint is due to be denied. It is hereby

**ORDERED** that the relief sought in the Plaintiff's complaint pursuant to 11 U.S.C. §523(a)(2)(A) is **DENIED**, and a judgment be and hereby is entered in favor of F. Clifton Wooley, whereby the indebtedness to Bay Minette Building Supply, Inc. is **DISCHARGED**.

Dated: November 6, 2006

/s/ William S. Shulman
WILLIAM S. SHULMAN
CHIEF U.S. BANKRUPTCY JUDGE

5

Case 05-01115    Doc 16    Filed 11/06/06    Entered 11/06/06 16:21:31    Desc Main
Document    Page 5 of 5